UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ST. LOUIS SUPERMARKET #3, INC., )<br>and ST. LOUIS SUPERMARKET, INC., )<br>)<br>Defendants. ) | Case number 4:04cv1358 TCM |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the motions of State Auto Property and Casualty Insurance Company[2] ("Plaintiff") for summary judgment and to disqualify John Hilton as attorney of record for defendants St. Louis Supermarket #3, Inc., and St. Louis Supermarket, Inc., and on the cross-motion of defendants for summary judgment on the issue of liability. [Docs. 23, 25, 29.]

### Background

This action has its genesis in business-owners insurance policies issued by Plaintiff to St. Louis Supermarket #1, Inc., and St. Louis Supermarket #3, Inc. The former, policy BOP 2177953, was issued for a grocery store at 2700 South Grand in St. Louis County, Missouri, and a grocery store at 8352 Frost in Berkeley, Missouri, for a one-year period

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2]Plaintiff is an Ohio corporation authorized to transact business in the state of Missouri. (Hartwell Aff. ¶ 3.)

beginning March 25, 2003 (Frost policy). (Compl. Ex. B.) The second, policy BOP 20160521 00, was issued for a grocery store at 4312-4331 Natural Bridge Road in St. Louis for a one-year period beginning January 10, 2003 (Natural Bridge Road policy). (Compl. Ex. A.) The parties stipulate that this was issued to St. Louis Supermarket #3, Inc.[3] The named insured on each policy was the corporation. (Exs. A and B.) St. Louis Real Estate Investments was listed as an additional insured on the Frost policy; The Desco Group Magnolia was listed as an additional insured on the Natural Bridge Road policy. (Id.)

Each policy included a provision declaring the policy void "in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning: 1. This policy; 2. The Covered Property; 3. Your interest in the Covered Property; or 4. A claim under this policy." (Id. at "Businessowners Common Policy Conditions" C.) Each policy also included the following two exclusions:

> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
>    . . .
>
>    f. Dishonesty
>       Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your [sic] or their partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
>
>       (1) Acting alone or in collusion with others;
>       (2) Whether or not occurring during the hours of employment.

---

[3]The policy, however, named the insured as St. Louis Supermarkets.

(Id. at "Businessowners Special Property Coverage Form § B(2)(f).)

    H.    The following exclusion and related provisions are added to Paragraph B.2. Exclusions applicable to Businessowners Property Coverage:

        1.    We will not pay for loss or damage arising out of any act committed:

            a.    By or at the direction of any insured; and
            b.    With the intent to cause a loss.

        2.    However, this exclusion will not apply to deny coverage to an innocent co-insured who did not cooperate in or contribute to the creation of the loss, provided the loss is otherwise covered under this policy *and* the loss arose out of domestic violence . . .

(Id. at "Missouri Changes" §§ H1, 2.) (Emphasis added.)

On July 21, 2003, fire at the Frost and Natural Bridge stores caused damage to the buildings and their contents. (Pl. Undisputed[4] Fact #3.) The fires were caused by arson. (Id.) At the time, Bassem Hamed was the president and secretary of St. Louis Supermarket #3, Inc.; Zeyad Abdeljabbar was its only director. (Defs. Stip. ¶ 5; Defs. Ex. 8.) Messrs. Hamed and Abdeljabbar then each owned 50 percent of the stock of St. Louis Supermarket #3, Inc. (Defs. Stip. ¶ 4.)

On October 30, Mr. Abdeljabbar submitted a sworn statement in proof of loss to Plaintiff claiming $354,055.08 in losses to the Natural Bridge store as a result of the fire. (Compl. Ex. F.)[5] The statement includes language that the "loss did not originate by any act,

---

[4] Defendants did not fully respond to each of Plaintiff's undisputed facts in their memorandum in opposition to Plaintiff's motion for summary judgment and support of their cross-motion for summary judgment. Nor did Plaintiff fully respond to Defendants' statement of undisputed material facts. The Court has reviewed each party's stipulation of facts and will refer to those facts that are not contested as "Stip".

[5] Plaintiff has submitted two Exhibit "Fs". One is the proof of loss form, and the other is a letter from Mr. Dunn to Mr. Deghroony. Here, the Court is referring to the proof of loss form.

- 3 -

design or procurement on the part of your insured, or this affiant. . . ." (Id.) On April 4, 2004, Mr. Abdeljabbar submitted a sworn statement in proof of loss to Plaintiff claiming $184,488.08 in loss contents and $152,911.00 in loss of use on the Frost store. (Compl. Ex. D.) His signature appears after a paragraph stating: "I swear that: (1) neither I nor any other person on my behalf, at my direction, or with my knowledge has intentionally caused this loss. . . . (3) I have not attempted to nor have I deceived or defrauded." (Id.) Mr. Abdeljabbar's signature is in the space labeled "Signature - Insured." (Id.) The same day, Mr. Hamed filed a sworn statement in proof of loss for the Natural Bridge store. (Compl. Ex. C.) This statement listed a greater loss than listed in the first sworn statement for the Natural Bridge store. (Id.) The sum of $368,554.72 was claimed for the contents and $176,358.00 for loss of use. (Id.) Mr. Hamed's signature appears below a paragraph identical to that in the April 4 statement signed by Mr. Abdeljabbar. (Id.)

On August 12, 2004, Zeyad Abdeljabbar and four other individuals, none of which were Mr. Hamed, were named in a 14-count indictment in the United States District Court for the Eastern District of Missouri. (Compl. Ex. E.) Mr. Abdeljabbar was charged with conspiring to "maliciously damage and destroy, by fire" four buildings, including the South Grand store, the Frost store, and the Natural Bridge store. (Id. at 7-8.) He was also charged with, inter alia, the underlying arson of the Frost and Natural Bridge stores, the attempted arson of the South Grand store, and the submission and mailing of false and fraudulent statements in proof of loss to Plaintiff as to the Frost and Natural Bridge stores.[6] (Id. at 22-

---

[6]In the remaining 3 of the 12 counts naming Plaintiff, he was charged with arson, attempted arson, and mail fraud relating to the burning of another grocery store.

32.) This indictment was superseded in February 2005 by a 17-count indictment naming Mr. Abdeljabbar in two of the additional three counts. A jury found him guilty in May 2005, and in August he was sentenced to an aggregate term of 495 months imprisonment and ordered to pay restitution of $1,140,000.00. See United States v. Abdeljabbar, No. S1-4:04cr442 SNL (E.D. Mo. Aug. 25, 2005). His conviction is on appeal.

Before his trial, on February 18, 2005, Mr. Abdeljabbar sold his interest in St. Louis Supermarket #3, Inc., to Fares Issa. (Defs. Stip. ¶ 8; Defs. Ex. 1.) One week later, Mr. Abdeljabbar resigned as the director of the corporation and was replaced by Mr. Hamed. (Defs. Stip. ¶ 9; Defs. Ex. 2.) Mr. Abdeljabbar is the sole owner of St. Louis Supermarket #1. (Pl. Stip. ¶ 4.)

Mr. Abdeljabbar has testified in a deposition that he spent most of his time working at the South Grand store and did not have daily responsibilities at the Natural Bridge store. (Abdeljabbar Dep. at 21-22.) Mr. Hamed was in charge of the day-to-day responsibilities and operation of the Natural Bridge store, including responsibility for the income and expenses at the store and maintaining the company checkbook. (Hamed Dep. at 16, 29.) He spent most of the working day at the Natural Bridge store through closing each evening. (Id. at 55.) Messrs. Abdeljabbar and Hamed are second cousins. (Id. at 10.)

In its pending complaint and motion for summary judgment, Plaintiff seeks a declaratory judgment that the two defendant corporations are barred from making a claim under either policy because both are void as a result of Mr. Abdeljabbar's conviction for arson and mail fraud. In its pending counterclaim and cross-motion for summary judgment, St. Louis Supermarket #3 ("Defendant") contends that it is entitled to the proceeds of the

insurance policy on the Natural Bridge store because Mr. Abdeljabbar is no longer a director or owner of the corporation, having sold his interest and resigned his position; that it is the only named insured, thus Mr. Abdeljabbar is not a co-insured as argued by Plaintiff; and that Mr. Hamed, who filed a proof of loss, had nothing to do with the fire damage. Defendant further argues that it alone is the insured and that any contrary interpretation would have the effect of reducing fire insurance coverage under the terms of the 1943 New York Standard Policy, in violation of applicable Missouri regulations.

The Missouri Department of Insurance has declared that the Standard Form Insurance Policy for use in Missouri is the 1943 Standard Form Insurance Policy of the State of New York. (20 C.S.R. 500-1.100(1)(A).) The Director of Insurance may approve fire insurance policy forms other than the New York policy if they meet the requirements of Missouri law and are at least as favorable to the insured as the New York policy. (20 C.S.R. 500-1.100(1)(B).) The Standard Policy states, in part, that the entire policy is void if "before or after a loss *the insured* has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of *the insured* therein, or in case of any fraud or false swearing by *the insured* relating thereto." (Defs. Ex. 6.) (Emphasis added). In 2001, the Director of Insurance acknowledged for use Plaintiff's "Missouri Changes" to the insurance policies at issue, including the exclusion set forth on page 3, supra. (Hartwell Aff. ¶ 4; Aff. Ex. B1.)

In its pending motion to disqualify attorney John E. Hilton, Plaintiff alleges that Mr. Hilton interviewed a witness in the related criminal case, testified at trial about this interview, and should, consequently, be disqualified because he has become a material

witness. The witness is Mr. Eldgre Huddleston. (Hilton Aff. ¶¶ 1-5.) Mr. Huddleston's company had an agreement with St. Louis Supermarket, Inc., to perform floor cleaning services for the two stores. (Id. ¶ 5.) He became a government informant who testified at trial against the defendants in the arson and mail fraud case. Mr. Hilton testified at the criminal trial on behalf of Mr. Abdeljabbar about a statement he obtained from Mr. Huddleston.

## Discussion

Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (citations omitted).

The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. See **City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.**, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). Instead, the non-moving party bears the burden of setting forth specific facts by affidavit or otherwise showing that there is a genuine issue for trial. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986); **Palesch v. Missouri Comm'n**

**on Human Rights**, 233 F.3d 560, 565-66 (8th Cir. 2000). All disputed facts are to be resolved, and all inferences are to be drawn, in favor of the non-moving party. See **Ghane v. West**, 148 F.3d 979, 981 (8th Cir. 1998); **Kopp v. Samaritan Health Sys., Inc.**, 13 F.3d 264, 269 (8th Cir. 1993). "[I]n order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." **Webb v. Lawrence County**, 144 F.3d 1131, 1135 (8th Cir. 1998). See also **Stanback v. Best Diversified Products, Inc.**, 180 F.3d 903, 909 (8th Cir. 1999) (finding general statements in affidavits and depositions are insufficient to defeat a properly supported summary judgment motion).

Additionally, where the unresolved issues are primarily legal, rather than factual, summary judgment is particularly appropriate. See **Adams v. Boy Scouts of America - Chickasaw Council**, 271 F.3d 769, 775 (8th Cir. 2001); **Gordon v. City of Kansas City, Mo.**, 241 F.3d 997, 1002 (8th Cir. 2001).

Missouri law is applicable, see **Capitol Indemn. Corp. v. 1405 Assocs., Inc.**, 340 F.3d 547, 549 (8th Cir. 2003); **St. Paul Fire and Marine Ins. Co. v. Missouri United School Ins. Council**, 98 F.3d 343, 345 (8th Cir. 1996), and holds that an insurance policy is a contract and is governed by the rules of contract construction, see **Blair v. Perry County Mut. Ins. Co.**, 118 S.W.3d 605, 606 (Mo. 2003) (en banc). "Disputes arising from the interpretation and application of insurance contracts are matters of law for the court where there are no underlying facts in dispute." **Waters v. Travel Guard Int'l**, 136 S.W.3d 100, 107 (Mo. Ct. App. 2004). If the insurance policy is unambiguous, it is enforced absent

public policy requiring coverage or a statute. **Heringer v. American Family Mut. Ins. Co.**, 140 S.W.3d 100, 102 (Mo. Ct. App. 2004). If the language in the insurance policy is ambiguous, the contract is construed against the insurer. **Id.** at 102-03. "Ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the policy." **Waters**, 136 S.W.3d at 107. "To test whether the language used in the policy is unambiguous, the language is construed in the light in which it would normally be understood by the lay person who bought and paid for the policy." **Heringer**, 140 S.W.3d at 103. The burden is on the insurer seeking to avoid coverage to prove the applicability of an exclusion. **Id.**

The insurance policies at issue provide in their respective Missouri Changes section that the insurer, Plaintiff, will not pay for damages or loss arising out of any act committed by or at the direction of *any* insured with the intent to cause loss. A separate section in each policy provides that the insurance policy is void if *any* insured intentionally conceals or misrepresents facts concerning a claim under the policy. And, another section provides that the insurance company will not pay for damages or loss resulting from dishonest acts by *anyone* with an interest in the property or *any* of the employees, directors, authorized representatives, or anyone with whom the property is entrusted to for any purpose.

According to Plaintiff's uncontroverted evidence, the Director of Insurance has approved the language in the Missouri Changes section of its insurance policies, thereby authorizing the use of the term "any" insured. The parties have stipulated that the named

insured in the policy for the Natural Bridge store[7] is a corporation, St. Louis Supermarket #3, Inc. At the time of the fire and when submitting the sworn statement in proof of loss denying any role in causing the fire, Mr. Abdeljabbar was the director of that corporation and a fifty percent owner of its stock. A jury has since found him guilty beyond a reasonable doubt of causing the fire and of filing false statements with Plaintiff about the fires at the Frost and Natural Bridge stores. Clearly, if the language in the two policies is valid, Mr. Abdeljabbar's interest in the corporation and his position as a director of the corporation relieves Plaintiff of any obligation to pay for damages to the Natural Bridge store caused by Mr. Abdeljabbar.

Defendant argues that the language is not valid because the Director of Insurance could not authorize the more-inclusive "any" term to define insured because (a) such term is less favorable to the insured than the "the" insured provision of the 1943 New York Standard Form Insurance Policy adopted by the State of Missouri and (b) Missouri regulations require that policy form language approved by the Director of Insurance be at least as favorable to the insured as the New York policy.

Although the Director of Insurance's authority to approve "any insured" language was not directly challenged, the Missouri Court of Appeals approved such language in **Childers v. State Farm Fire & Cas. Co.**, 799 S.W.2d 138 (Mo. Ct. App. 1990), when resolving a dispute whether a co-insured/spouse could recover under a fire insurance policy issued for a business enterprise damaged by fire set by the other co-insured/spouse. The insurer had

---

[7]Defendants have not addressed Plaintiff's arguments about the Frost store in either their response to Plaintiff's motion for summary judgment or in their cross-motion. Accordingly, they have abandoned their opposition to the declaratory judgment action as to the Frost store. See **Ross v. Kansas City Power & Light Co.**, 243 F.3d 1041, 1051 (8th Cir. 2002); **Opus Corp. v. IBM Corp.**, 141 F.3d 1261, 1264 (8th Cir. 1998).

denied payment on the grounds that that co-insured had made a material misrepresentation about the cause of the fire when filing a claim.  The insurance policy included a provision that the "'entire policy shall be void if *any* insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.'"  **Id.** at 141 (quoting policy) (emphasis added).  This provision, the court held, "unambiguously declares that [the insured's] rights are jointly rather than severally held.  By stating that the entire policy is void when *any* insured intentionally conceals a material fact or circumstance, the insurance contract clearly makes either appellants' recovery contingent upon the others conduct."  **Id.** (alteration added.)  See also **Patterson v. State Auto Mut. Ins. Co.**, 105 F.3d 1251, 1253 (8th Cir. 1997) (affirming denial by insurer of payment after a fire loss on a policy including "any insured" language in Missouri policy); **Amick v. State Farm Fire & Cas. Co.**, 862 F.2d 704, 706 (8th Cir. 1988) (finding Missouri insurance policy provision denying coverage if "you or any other insured commit fraud or misrepresent material fact" precluded coverage on claim by innocent co-insured); **Employers Mut. Cas. Co. v. Tavernaro**, 4 F. Supp.2d 868, 870 (E.D. Mo. 1998) (holding that provision in insurance policy precluding payment for loss caused by dishonest or criminal act "by you, any of your partners, employees, directors, . . ." and provision voiding coverage if "you or any other insured"[8] intentionally concealed or misrepresented a material fact precluded payment for claim presented by innocent co-insured/spouse for loss to business enterprise caused by fire intentionally set by other co-insured/spouse).  Additionally, in **Amick**, 862 F.2d at 706, the

---

[8]The two provisions at issue include identical language to that in two insurance policies issued by Defendants by Plaintiff.

Eighth Circuit Court of Appeals noted that an insurance policy that included language denying recovery to "you and any other insured" in the event "you or any other insured" commit fraud or misrepresent material facts had been submitted to the director of insurance for review and that, under Missouri law, Mo.Rev.Stat. § 375.920, the director was "required to review policy forms to insure that each form complies with state insurance laws and contains 'words, phraseology, conditions, and provisions which are specific, certain, and unambiguous.'" **Id.** (quoting § 375.920). The court then found that the "you or any other insured" language barring recovery by innocent co-insureds was clear and unambiguous and barred recovery by insured for damage caused to house by fire set by co-insured. **Id.**

In support of its argument that "any" insured language is not permitted, Defendant cites **Spulak v. Tower Ins. Co., Inc.**, 601 N.E.2d 720, 724 (Neb. 1999). In that case, the Nebraska Supreme Court found that the Nebraska Director of Insurance could not approve a change to insurance policies including language similar to the dishonesty exclusion in the instant insurance contracts because such change in the 1943 New York Standard Form Insurance Policy reduced coverage in violation of Nebraska law. The application of the Nebraska law to the instant case is foreclosed by the cases cited above reviewing and approving the use of the term "any" in Missouri fire insurance policies.

Moreover, even if the Nebraska case were arguably applicable to the instant case, Plaintiff is not obligated to pay for loss caused by a director and shareholder of St. Louis Supermarket #3, Inc., to its Natural Bridge store. Unlike the individuals named as insured in the cases cited above, the corporation, St. Louis Supermarket #3, Inc., is the named insured for the Natural Bridge store.

"In insurance cases involving arson, 'courts have permitted insurers to attribute arson to a corporation by a variety of methods other than a formal grant of authority.'" **Capitol Indemn. Corp. v. Evolution, Inc.**, 293 F.Supp.2d 1067, 1073 (D. N.D. 2003) (quoting Cora Pub, Inc. v. Continental Cas. Co., 619 F.2d 482, 486 (5th Cir. 1980)). For instance, "[c]orporate assent to arson may be proved by circumstantial evidence," **Mississippi Lofts, Inc. v. Lexington Ins. Co.**, 841 F.2d 251, 253 (8th Cir. 1988) (alteration added), and courts have found such assent "especially where the corporation is a closely-held corporation and where principal officers or stockholders are implicated in the act," **id.**

In the instant case, Mr. Abdeljabbar was the only director on the corporation's board of directors and a fifty-percent shareholder in the closely-held corporation. (Def. Ex. A.) "The management and control of the property and business of a corporation is vested by § 351.310 R.S.Mo in the Board of Directors, and this has been a fundamental principle of our statutory corporate law for many years." **Saigh v. Busch**, 396 S.W.2d 9, 15 (Mo. Ct. App. 1965). Thus, a corporation "is responsible for the negligence, misfeasances, and frauds of its board of directors, . . ." **Fairgate Realty Co. v. Drozda**, 181 S.W. 398, 402 (Mo. 1916). Additionally, "[a] corporation is liable for a fraud perpetrated on a third person by its agent within the apparent scope of his authority or the course of his employment even where the wrongful acts are ultra vires or in fraud of the corporation itself, and despite the fact that the corporation did not authorize, concur in, or know of, the fraud." **State on inf. of Taylor v. American Ins. Co.**, 200 S.W.2d 1, 40 (Mo. 1947) (en banc) (citations omitted).

It is undisputed in these proceedings that Mr. Abdeljabbar intentionally caused the Natural Bridge store to catch fire and denied any role in the fire when filing a proof of loss with Plaintiff. His later sale of his stock in the corporation and his resignation as the director does not retroactively place the burden on Plaintiff to pay for a fire caused by a corporate director and stockholder. Cf. **Mississippi Lofts, Inc.**, 841 F.2d at 253 (finding that jury could have reasonably concluded that corporate entity assented to and approved of the intentional burning of its building by the only shareholders officers).

The language in the instant policy is clear and unambiguous. Coverage is contingent on the actions of one who has an interest in the company or its directors, who, in this case, caused the fire and filed a false report with the insurance company, thereby voiding coverage. For the foregoing reasons, Plaintiff's motion for summary judgment will be granted.

Plaintiff's motion to disqualify John Hilton as an attorney of record for Defendants will not be granted. The information Mr. Hilton would allegedly provide is relevant only to the question of who caused the arson. That question is not before the Court. Mr. Abdeljabbar was found guilty of both arsons and for filing false affidavits. The fact that Mr. Hilton investigated the case for his client and testified at the criminal trial has no bearing on his representation in this civil matter.

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion for summary judgment filed by State Auto Property and Casualty Insurance Company is **GRANTED**. [Doc. 25]

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by defendants St. Louis Supermarket #3, Inc., and St. Louis Supermarket, Inc., is **DENIED**. [Doc. 29]

**IT IS FINALLY ORDERED** that the motion to disqualify John Hilton as Attorney of Record for Defendants is **DENIED**. [Doc. 23]

An appropriate Judgment shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of January, 2006.